U.S. FEDERAL DISTRICT COURT
IN THE WESTERN DISTRICT OF MICHIGAN

FILED - GR
AUG -3 PM 2:10

[CLERK
DISTRICT COURT
WESTERN DISTRICT MICH]

JEANNE HORTON,
  A Michigan Resident,

  PLAINTIFF,

vs.

WOLVERINE WORDLWIDE, INC.
  A Michigan Based Corporation,

  DEFENDANT.
_____/

HON. _____

FILE NO. 1:01cv493

Robert Holmes Bell
Chief, U.S. District Judge

**COMPLAINT & JURY DEMAND**

EUGENIE B. EARDLEY (P48615)
JOHN F. EARDLEY (P35868)
  Eardley Law Offices P.C.
  Attorneys for Plaintiff
  P.O. Box 830
  Cannonsburg, Michigan 49317
  (616) 874-2647
_____/

There is no other pending or resolved civil action arising out of the transaction or occurrence alleged in the complaint.

COMES NOW, the Plaintiff by and through her attorneys, Eardley Law Offices P.C. and in complaining against the Defendant hereby states as follows:

## JURISDICTION

1.) Plaintiff claims jurisdiction of this Honorable Court by virtue of the Family and Medical Leave Act, 29 U.S.C.A. Section 2601 et seq., pursuant to 2617(a), (hereinafter FMLA) which provides for jurisdiction over enforcement under the Act in either State or Federal Court.

## PARTIES

2.) Plaintiff, Jeanne Horton (hereinafter Plaintiff) is and was resident in Newaygo, in the State of Michigan and the County of Newaygo, at all times outlined in this Complaint.

3.) Defendant is a Michigan based corporation duly incorporated in the State of Michigan, listed in good standing with the State of Michigan (hereinafter Defendant) at all times pertinent to this Complaint.

4.) Plaintiff was duly employed as a laborer worker by Defendant on or about October 30 1997 earning $6.00 per hour, but by 1999 she was earning $9.25 per hour base pay along with health and other benefits, valued at $10.36 per hour, when she was wrongfully terminated by Defendant employer on or about September 9, 1999 .

5.) Defendant is an "employer" who met and meets the definitions of a covered employer under Section 2611(4)(B) of the FMLA at the time of the events outlined in the complaint, as it had then and has now over fifty (50) employees each working days for at least twenty (20) work weeks each year.

6.) Plaintiff was an "employee" who met the definition of a covered and eligible employee under the FMLA, pursuant to Section 2611(2)(a) during the time outlined in this complaint, as she had been so employed for over twelve months with Defendant preceding the events outlined in this complaint.

7.) Plaintiff was a member of a Union during and of the events outlined in this complaint.

## FACTS

8.) On or about the weekend of July 24, 1997, Plaintiff was injured in an boating accident, with a broken rib.

9.) Plaintiff requested leave under FMLA by duly notifying Defendant employer on or about July 28, 1999, asking for leave from July 26 through August 11, 1999.

10.) The request was submitted in writing to Gail Lunger, the FMLA Director for Defendant employer on July 28, 1999.

11.) A second leave request was submitted on August 13, 1999, again to Gail Lunger, FMLA Director for Defendant employer, in which Plaintiff asked for the period of August 11, 1999 through September 4, 1999.

12.) Defendant's FMLA Director replied and stated in a letter dated August 24, 1999 that the leave would be approved, but only until September 2, and that Plaintiff had to come back to work September 3, 1999.

13.) Plaintiff called Lunger and asked why her second leave request was not being approved in full.

14.) Lunger replied that it was her error, and that she would correct it.

15.) Plaintiff then mailed another doctor's slip noting that Plaintiff had another doctor's appointment for September 3, 1999, and that she would return to work on September 4, 1999.

16.) Plaintiff attended her doctor's appointment on September 3, 1999, and was told by the doctor he wished to keep her off work until September 20, 1999.

17.) On or about September 4, 1999, Plaintiff sent a copy of the new doctor's slip to

3

Lunger by mail, as well as to Karen Inman, the disability insurance representative for Defendant's employees, whose office is in Defendant's plant in Rockford.

18.) This was Labor Day weekend.

19.) On September 7, 1999, Plaintiff contacted Karen Inman, the representative of Wolverine Mutual Benefit Association, the disability carrier for Defendant's employees, about a disability check that was late.

20.) In that phone conversation, Plaintiff told Inman that her medical leave had been extended again, until September 20, 1999.

21.) Plaintiff knew that Lunger and Inman were in constant communication, and both worked for Defendant, so she asked her to tell Lunger about the added extension of time to her leave.

22.) Inman said she would do so for her.

23.) Plaintiff then got a termination letter from Defendant employer dated September 9, 1999.

24.) On September 10, 1999, the day she received the letter, Plaintiff called and tried to speak with Jeffrey West, the representative of the Defendant who had signed her termination letter.

25.) He advised her to speak to Gail Lunger.

26.) Plaintiff did call Gail Lunger, on September 10, 1999, and asked her about the termination letter, and whether she had been informed by Karen Inman that she had called in on September 7, 1999, and told her about the extended leave.

27.) Lunger acknowledged to Plaintiff that Inman had informed her of the extension orally on or about September 7, 1999.

28.) Plaintiff asked why she was fired if she had told Inman of the extended leave, who then relayed it to Lunger.

29.) Lunger told Plaintiff that the Defendant's rules required that Plaintiff contact Lunger directly, and that a relayed message through Inman was insufficient, in her opinion, and the call only would have counted if Plaintiff had spoken directly to Lunger herself.

30.) Plaintiff assumed that the last doctor's slip was received in the mail by Defendants by September 10, 1999.

31.) Plaintiff made efforts to have union officials pursue the matter on her behalf, but they declined to proceed with a grievance.

32.) Plaintiff went back to her doctor on September 15, 1999, and got another doctor's slip, along with a copy of the prior doctor's slip dated August 11, 1999 showing that she was not supposed to return to work until September 4, 1999.

33.) On September 20, 1999, Plaintiff went to Defendant's plant to get her last disability check from Karen Inman, whom she met in the plant's parking lot.

34.) Inman again confirmed that she had orally told Gail Lunger, Defendant's FMLA Director, on September 7, 1999, about Plaintiff's leave extension, and signed a statement to that effect.

35.) The first actual working day at Defendant's plant after September 3, 1999 was September 7, 2001, as that Saturday was not a work day, nor was Sunday, and Labor Day was

5

a holiday.

36.) Plaintiff was terminated on September 9, 1999, so even if Lunger's interpretation of the need for Plaintiff to physically call her on September 7, 1999, Plaintiff was not given the 3 days notice described in the termination letter as being Defendant's policies.

37.) Plaintiff attempted to fight to get her job back for approximately 2 months, and was paid her unemployment benefits from the MESC/Unemployment Agency despite Defendant's false allegations that she had been fired for misconduct.

38.) Plaintiff learned that she was being given poor references by Defendant, and that precluded her from being considered for new jobs because they noted she was fired for violation of work rules.

39.) Plaintiff eventually found a job with WESCO, a gas station and convenience store chain, in Newaygo, making $7.50 per hour, with no benefits.

40.) Plaintiff lost this position in February 2001, as she had no transportation to work.

41.) Plaintiff was unable to continue making payments on her land contract on her home.

42.) Plaintiff is presently applying for work.

## COUNT ONE: VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT BY DIRECT INTERFERENCE IN PLAINTIFF'S EXERCISE OF RIGHTS UNDER THE ACT

43.) Plaintiff re-alleges all paragraphs numbered 1 through 42 herein, and re-incorporates them as if set forth herein in their entirety.

44.) Defendant is charged with a statutory duty to not interfere in Plaintiff's exercise

of rights under the Act, pursuant to Section 2615(a)(1), and Plaintiff is afforded the opportunity to enforce these rights civilly under Section 2617(a)(2).

45.) By capriciously and arbitrarily denying or suspending Plaintiff's continued leave or absence on September 7, 1999 despite prior certification of the need for the leave in conformity with the FMLA, as well as Defendant's written, explicit notice of the parameters of that leave;

46.) Defendant willfully and/or negligently denied Plaintiff her rights to approved leave by docking or assessing points against Plaintiff under its absenteeism policy for taking leave but not telephoning Gail Lunger on September 7, 1999; but telling Karen Inman, despite their admission that the telephone was received;

47.) Defendant did this willfully and intentionally, and/or negligently with an apparent disregard for Plaintiff's rights under the FMLA, with the additional points allowing Plaintiff's termination;

48.) Due to Defendant's breach of their statutory duties, Plaintiff has suffered damages, including but not limited to those damages outlined in Section 2617 (a)(1)(A) & (B):

the amount of any wages, employment benefits or other compensation lost or denied due to these violations, including lost health insurance benefits OR any actual losses sustained by the Plaintiff as a direct result of these violations, up to a sum equal to 12 weeks of wages for the Plaintiff, a well as interest at the prevailing rate, as well as liquidated damages, and any such equitable relief as may be appropriate, including reinstatement and promotion, as well as a reasonable attorney fee, reasonable expert witness fees and other costs of the action to enforce the

Act.

WHEREFORE, Plaintiff requests a judgment in her favor and against Defendant, along with applicable interest, costs, and attorney fees, as well as exemplary damages.

## COUNT TWO, VIOLATION OF FAMILY AND MEDICAL LEAVE ACT THROUGH DISCRIMINATION FOR EXERCISE OF RIGHTS UNDER THE ACT

49.) Plaintiff re-alleges all paragraphs numbered 1 through 48 as if set forth fully herein, and re-incorporates them as if set forth in their entirety.

50.) By terminating Plaintiff during her pre-approved and certified leave, allegedly due to excessive absenteeism, Defendant has breached its duty to not discriminate against any individual for opposing any practice made unlawful under Section 2615 (a)(2) of the Act;

51.) The real motivation for the Defendant's firing of the Plaintiff was the reality that Plaintiff had already utilized her right to leave under the Act in the prior months, and that her continued leave was an inconvenience to the Defendant's business, and required that they pay for her benefits and hold her position until she returned,

WHEREFORE, Plaintiff requests a judgment in her favor and against Defendant, along with applicable interest, costs, and attorney fees, as well as exemplary damages, if allowable.

## DAMAGES

52.) Wherefore, the above considered, Plaintiff respectfully requests compensatory and exemplary damages for Plaintiff's lost wages and benefits had her employment continued, and due to the termination of her medical insurance coverage by the Defendant, pain and distress, mental

8

anguish and suffering, damage to her reputation, attorneys fees and interest, and all costs, expert witness fees and other damages available under the Family and Medical Leave Act, 29 U.S.C.A. Section 2601 et seq., pursuant to 2617(a), as outlined above.

## JURY DEMAND

Plaintiff hereby requests a trial by jury, on all issues outlined in this complaint.

Dated: 7-26-01

Jeanne Horton (Dunham)
JEANNE HORTON, Plaintiff

EARDLEY LAW OFFICES P.C. by;

_____ 7/18/01
EUGENIE B. EARDLEY (P48615)
JOHN F. EARDLEY (P35868)
Attorneys for Plaintiff

State of Michigan   )
                    )ss.
County of ~~Kent~~ Newaygo )

On the 26th day of July, 2001 before me, A Notary Public, personally appeared the above-named Plaintiff, Jeanne Horton who made oath that she has read the foregoing Complaint by her subscribed and knows the contents thereof, and that the same is true of her own knowledge, except as to those matter, which are therein stated to be on her information and belief and to those matters she believes to be true.

_Geraldine V. Johnson_
Commissioned in NEWAYGO County, MI
My Commission Expires: 8/27/04

\complain.wpd